TAGGED OPINION



**ORDERED in the Southern District of Florida on July 18, 2023.**

_____
**Scott M. Grossman, Judge
United States Bankruptcy Court**

UNITED STATES BANKTUPCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

AAMIR KHAN and HUMA AAMIR,                    Case No. 18-23908-SMG

      Debtors.                                          Chapter 7
_____/

ALI PANJWANI,

      Plaintiff,

v.                                                           Adv. No. 19-01040-SMG

AAMIR KHAN and HUMA AAMIR,

      Defendants.
_____/

## ORDER (I) GRANTING IN PART AND DENYING IN PART POST-JUDGMENT MOTION; (II) VACATING FINAL JUDGMENT; (III) GRANTING PARTIAL SUMMARY JUDGMENT; AND (IV) GRANTING RELATED RELIEF

In *Bartenwerfer v. Buckley*[1] the Supreme Court held that a debt for money to the extent obtained by false pretenses, a false representation, or actual fraud may be nondischargeable even if the debtor did not personally commit the fraudulent act.[2] *Bartenwerfer* was decided two weeks before this Court denied Plaintiff Ali Panjwani's motion for summary judgment and granted Defendants Aamir Khan's and Huma Aamir's motion to dismiss this adversary proceeding.[3] Because this Court did not consider *Bartenwerfer* in its ruling, it must now reconsider its decision.

## I.    BACKGROUND.

After a state court jury trial, the Plaintiff obtained a judgment against Defendant Aamir Khan for $1,704,987.39, plus interest, attorneys' fees, and costs, for breach of contract, conversion, unjust enrichment, and civil conspiracy, and against Defendant Huma Aamir for $1,655,353.10, plus interest, attorneys' fees, and costs, for breach of contract and civil conspiracy. For the civil conspiracy counts, the jury found that the Defendants (along with four other state court co-defendants) conspired to defraud the Plaintiff and convert all or part of his investment in an entity called Alliance International Distributors, Inc. ("Alliance"). The jury further found that the Defendants (and the other state court co-defendants) engaged in overt acts in furtherance of the conspiracy including, but not limited to, manufacturing fraudulent invoices, initiating wire transfers, processing fraudulent invoices, and transferring

---

[1] 598 U.S. ---, 143 S. Ct. 665 (Feb. 22, 2023).

[2] *Id.* at 676 ("innocent people are sometimes held liable for fraud they did not personally commit, and, if they declare bankruptcy, § 523(a)(2)(A) bars discharge of that debt.").

[3] ECF No. 128; *Panjwani v. Khan (In re Khan)*, 2023 WL 2413723 (Bankr. S.D. Fla. Mar. 8, 2023).

funds to themselves or third-party entities owned by the Defendants and the other state court co-defendants, or their families.

In this adversary proceeding, the Plaintiff sought a determination that these judgment debts are excepted from the Defendants' bankruptcy discharges under 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6). Based entirely on a collateral estoppel argument – and without any other material supporting facts – the Plaintiff sought summary judgment[4] with respect to his second amended complaint[5] in this adversary proceeding. The Defendants opposed summary judgment[6] and moved to dismiss the second amended complaint for failure to state a claim upon which relief may be granted.[7]

The Court entered briefing orders on both motions,[8] and after considering the second amended complaint, the motion for summary judgment, the motion to dismiss, the respective statements of material fact,[9] and the related briefs,[10] the Court entered an *Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendants' Motion to Dismiss*[11] (the "Summary Judgment and Dismissal Order") and entered a Final Judgment in favor of the Defendants.[12] In short, based on the record before it, the Court determined that the Plaintiff failed to establish the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law, such

---

[4] ECF No. 113.
[5] ECF No. 109.
[6] ECF No. 119.
[7] ECF No. 117.
[8] ECF Nos. 115, 118.
[9] ECF Nos. 114, 121, 125.
[10] ECF Nos. 119, 124, 125, 127.
[11] *Khan*, 2023 WL 2413723.
[12] ECF No. 129.

that summary judgment had to be denied.[13] The Court also determined that the second amended complaint failed to state a claim upon which relief may be granted.[14] Because the Court had already allowed the Plaintiff two opportunities to amend his complaint, and because in response to the motion to dismiss the Plaintiff stood on his allegations rather than seek leave to further amend, the Court dismissed the second amended complaint with prejudice.[15]

The Plaintiff then timely filed a post-judgment motion[16] (the "Post-Judgment Motion") requesting that the Court:

> (1) amend its findings or make additional findings under Federal Rule of Civil Procedure 52(b), made applicable here by Federal Rule of Bankruptcy Procedure 7052;

> (2) alter or amend the Summary Judgment and Dismissal Order and Final Judgment under Federal Rule of Civil Procedure 59(e), made applicable here by Federal Rule of Bankruptcy Procedure 9023;

> (3) grant a new trial under Rule 59(a);

> (4) grant relief from the Summary Judgment and Dismissal Order and the Final Judgment under Federal Rule of Civil Procedure 60, made applicable here by Federal Rule of Bankruptcy Procedure 9024;

> (5) reopen the adversary proceeding to receive new evidence; and

> (6) grant leave to file an amended complaint.

Even though the Supreme Court decided *Bartenwerfer* two weeks before the Court entered the Summary Judgment and Dismissal Order, the Plaintiff did not mention

---

[13] *Khan*, 2023 WL 2413723, at *10-12.
[14] *Id.*
[15] *Id.* at 12.
[16] ECF No. 133.

or argue anything about *Bartenwerfer* in his Post-Judgment Motion.[17] It was only in his reply brief that he raised *Bartenwerfer* for the first time.[18] Nevertheless, without invitation from the Court or requesting permission to do so, the Defendants then filed a supplemental response brief addressing the Plaintiff's *Bartenwerfer* argument.[19]

The Court then set an oral argument to consider (1) whether and how *Bartenwerfer* applies to this adversary proceeding, and (2) why the Court should consider *Bartenwerfer* when it was not raised in the Post-Judgment Motion and was only raised for the first time in a reply brief.[20] In advance of that hearing – again, without being invited or requesting permission to do so – the Defendants filed another supplemental memorandum of law, in which they again addressed *Bartenwerfer*.[21]

## II.    ANALYSIS.

Normally the Court would not consider an argument raised for the first time in a reply brief.[22] At oral argument, however, the Plaintiff argued that *Bartenwerfer* was not a new argument being raised for the first time, but instead was an intervening change in controlling law that the Court must consider. While all parties (including the Court) could have saved substantial resources had the Plaintiff filed a notice of supplemental authority as to *Bartenwerfer* when this matter was still under

---

[17] The Plaintiff also failed to file any notice of supplemental authority with respect to *Bartenwerfer* while the summary judgment and dismissal motions were still under advisement.
[18] ECF No. 137.
[19] ECF No. 138.
[20] ECF No. 139.
[21] ECF No. 141.
[22] *See In re Visium Techs., Inc.*, 635 B.R. 428, 431 (Bankr. S.D. Fla. 2022) (citing *Fed. Trade Comm'n v. Alternatel, Inc.*, 2008 WL 11333090, at *2 (S.D. Fla. 2008) (citing *KMS Rest. Corp. v. Wendy's Intern., Inc.*, 361 F.3d 1321, 1328 n.4 (11th Cir. 2004); *Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987))).

advisement, or at least raised *Bartenwerfer* in his Post-Judgment Motion, the general rule about not considering an argument raised for the first time in a reply brief (at least at the trial court level) is essentially one of fairness, due process, and an opportunity for both sides to be heard. But here, because (a) the Defendants (albeit without asking permission) filed two briefs to address *Bartenwerfer*, (b) the Court held an oral argument to consider *Bartenwerfer*, and (c) *Bartenwerfer* is so clearly an intervening change in controlling law directly on point to an issue in this adversary proceeding, the Court will now consider *Bartenwerfer*.[23]

A.   <u>The Court Did Not Conduct a Trial or Make Factual Findings</u>.

Before addressing *Bartenwerfer*, however, the Court will quickly dispose of the Plaintiff's first, third, and fifth requests for relief in his Post-Judgment Motion: (1) to amend or make additional findings, (3) for a new trial, and (5) to receive new evidence. The Court did not conduct a trial and did not make any factual findings here. The Court considered and denied a motion for summary judgment, and then considered and granted a motion to dismiss. Neither of these motions entailed conducting a trial or making factual findings. As noted by the Court in its Summary Judgment and Dismissal Order, in ruling on a motion for summary judgment, the Court does not "weigh the evidence or find facts at the summary judgment stage. Rather, the Court determines only whether there is sufficient evidence upon which a reasonable juror

---

[23] Another prudential reason to consider *Bartenwerfer* now is that in the event of an appeal, the District Court would likely remand the case for consideration of *Bartenwerfer* anyway. *See, e.g., In re Parker*, 644 B.R. 805, 843 (N.D. Cal. 2021) (remanding to consider *Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019)); *In re Messina*, 386 F. App'x 152, 154 (3d Cir. 2010) (remanding to consider *Schwab v. Reilly*, 130 S.Ct. 2652 (2010)); *In re Markowitz*, 190 F.3d 455, 465-66 (6th Cir. 1999) (remanding to consider *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)); *Matter of Rice*, 90 B.R. 386, 390-91 (N.D. Ind. 1988) (remanding to consider *United Sav. Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365 (1988)).

could find for the non-moving party."[24] The Court also does not make factual findings in ruling on motions to dismiss. Instead, the Court must accept "all of the factual allegations in the complaint as true,"[25] and then determine "whether the well-pleaded facts in the complaint present a plausible claim for relief."[26] Here, because the Court did not conduct a trial or make any findings of fact, there are no findings to amend or additional findings to make, no new trial to grant, and no new evidence to receive. Accordingly, the first, third, and fifth requests for relief in the Post-Judgment Motion will be denied.

That then leaves the second, fourth, and sixth requests: (2) to alter or amend the Summary Judgment and Dismissal Order and Final Judgment under Rule 59(e), (4) for relief from the Summary Judgment and Dismissal Order and Final Judgment under Rule 60,[27] and (6) for leave to file a third amended complaint under Federal Rule of Civil Procedure 15(a)(2).[28]

B.     *Bartenwerfer* is an Intervening Change in Controlling Law that Warrants Reconsideration.

Under Federal Rule of Civil Procedure 60(b), a court may grant relief from a final judgment or order on the following grounds:

---

[24] *Khan*, 2023 WL 2413723, at *8 (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003)).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[26] *Khan*, 2023 WL 2413723, at *7 (citing *Iqbal*, 556 U.S. at 679).
[27] Rule 60(a) deals with corrections based on clerical mistakes, oversights, and omissions. The Plaintiff has not alleged mistake, oversight, or omission as a basis for relief here, so the Court will analyze his motion only under Rule 60(b).
[28] Made applicable here by Federal Rule of Bankruptcy Procedure 7015.

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.[29]

Federal Rule of Civil Procedure 59(e) also grants courts authority to reconsider orders and judgments. Unlike Rule 60(b), it does not list any criteria. But courts applying Rule 59(e) have "delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."[30] *Bartenwerfer* is clearly an intervening change in controlling law that under Rule 59(e) warrants reconsideration, in part, of the Summary Judgment and Dismissal Order.

In *Bartenwerfer*, the Supreme Court considered whether a fraudulent representation about a property defect made by one business partner rendered the debt for misrepresentation nondischargeable as to the other business partner who did not make the misrepresentation.[31] Because under applicable state law the partner who did not make the misrepresentation was nevertheless liable for the debt, based

---

[29] Fed. R. Civ. P. 60(b).

[30] *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357–58 (S.D. Fla. 2004) (citing *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994); 18 Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4478 (1981)).

[31] 143 S. Ct. at 670-671.

on its reading of 11 U.S.C. § 523(a)(2)(A), the Supreme Court determined that the debt was excepted from the "innocent" partner's bankruptcy discharge.[32] Looking to the text of the statute, the Supreme Court held that it is the nature of the debt itself – rather than the actions of the debtor – which determines whether a debt is excepted from discharge under section 523(a)(2)(A).[33] If the debt is a debt for money to the extent obtained by false pretenses, a false representation, or actual fraud, and if the debtor is liable for that debt under applicable law, then regardless of whether the debtor herself committed the fraudulent act, the debt is excepted from her discharge. That is the case here.

This Court originally denied summary judgment because it determined there was a genuine dispute of material fact as to whether the Defendants themselves had committed any specific fraudulent acts. The state court jury found that the Defendants did not knowingly make false statements of material facts to the Plaintiff, that they did not make these representations with intent to induce the Plaintiff to invest in Alliance, and that the Plaintiff did not rely on the Defendants' false representations to invest in Alliance.[34] But the state court jury *did* find that the Defendants (along with four other co-defendants) conspired to defraud the Plaintiff to convert all or part of his investment in Alliance and that all of the state court defendants collectively engaged in overt acts (without specifying who committed which act) in furtherance of the conspiracy.[35] Thus, this Court determined it could

---

[32] *Id.* at 676.
[33] *Id.* at 671-673.
[34] *Khan*, 2023 WL 2413723, at *9.
[35] *Id.*

not grant summary judgment based solely on the collateral estoppel effect of the jury verdict and final judgment without a clear record that the Defendants themselves committed fraudulent acts in furtherance of the conspiracy.

After *Bartenwerfer*, however, it does not matter whether the Defendants committed the specific fraudulent acts. *Bartenwerfer* instructs the Court to look at the debt and ask first: is this a debt for money to the extent obtained by false pretenses, a false representation, or actual fraud?[36] Then *Bartenwerfer* asks if the debtors are liable for this debt under applicable law, without considering whether the debtors themselves actually committed the fraudulent acts. If so, then the debt is not dischargeable.

The relevant debt here is for civil conspiracy. Under Florida law, the elements of civil conspiracy are:

(a) a conspiracy between two or more parties;

(b) to do an unlawful act or to do a lawful act by unlawful means;

(c) the doing of some overt act in furtherance of the conspiracy; and

(d) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy.[37]

The state court jury found all four of these elements:

(a) the Defendants conspired with the four other state court co-defendants;

(b) to defraud the Plaintiff and convert all or part of his investment in Alliance;

---

[36] *Bartenwerfer*, 143 S.Ct. at 671.

[37] *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1350-51 (11th Cir. 2021) (citing *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. 5th DCA 2006)).

(c) the Defendants (along with the four other state court co-defendants) engaged in overt acts in furtherance of the conspiracy including, but not limited to, manufacturing fraudulent invoices, initiating wire transfers, processing fraudulent invoices, and transferring funds to themselves or third-party entities owned by the Defendants (and the other state court co-defendants) or their families;[38] and

(d) the Plaintiff suffered $1,000,000 in principal damages as a result of the conspiracy.

To be excepted from discharge under section 523(a)(2)(A), a debt must be for money to the extent obtained by false pretenses, a false representation, or actual fraud. "Generally speaking, false pretenses contemplates a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor."[39] "A false representation, for purposes of § 523(a)(2), is analogous to a common law fraudulent misrepresentation."[40] And "actual fraud consists of any deceit, artifice, trick, or design involving the direct and active operation of the mind, used to circumvent and cheat another."[41]

---

[38] Based on the jury verdict and final judgment, however, it is unclear whether either of the Defendants committed the specific *fraudulent* acts in furtherance of the conspiracy.

[39] *In re Saks*, 2022 WL 18273866, at *6 (Bankr. M.D. Fla. 2022) (cleaned up) (citing *Taylor v. Wood (In re Wood)*, 245 F. App'x 916, 918 (11th Cir. 2007) (quoting *FCC Nat'l Bank v. Gilmore (In re Gilmore)*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998)).

[40] *Id.* (cleaned up) (citing *Warren v. Warren (In re Warren)*, 2022 WL 17481431, at *7 (Bankr. M.D. Fla. 2022) (to prove a false representation, "a plaintiff must establish the following elements: (i) debtor made a false representation with the intent to deceive plaintiff; (ii) plaintiff relied on the misrepresentation; (iii) plaintiff's reliance was justified; and (iv) plaintiff sustained a loss because of debtor's misrepresentation.")).

[41] *Id.* (cleaned up) (quoting *BMO Harris Bank v. Richert (In re Richert)*, 632 B.R. 877, 894 (Bankr. M.D. Fla. 2021) (quoting *FTC v. Juravin (In re Juravin)*, 623 B.R. 343, 346 (Bankr. M.D. Fla. 2020)); citing *Husky Int'l Elec., Inc. v. Ritz*, 578 U.S. 356, 360 (2016).

To determine whether the state court jury verdict on civil conspiracy collaterally estops the Defendants from contesting dischargeability as a debt for money obtained by false pretenses, a false representation, or actual fraud, the Court must next examine the elements of collateral estoppel under Florida law, which are that:

(1) the identical issue was presented in the prior proceeding;

(2) the issue was a critical and necessary part of the prior determination;

(3) there was a full and fair opportunity to litigate the issue;

(4) the parties to the prior action were identical to the parties of the current proceeding; and

(5) the issue was actually litigated.[42]

There is no dispute that there was a full and fair opportunity to litigate, that the parties were identical, that the issues were actually litigated, and that the issue of whether the Defendants conspired to defraud the Plaintiff (and engaged in overt acts in furtherance thereof) was a critical and necessary part of the prior determination.[43] So the only issue here is whether the state court jury's finding that the Defendants conspired to defraud the Plaintiff (and engaged in overt acts in furtherance thereof)

---

[42] *See Khan*, 2023 WL 2413723, at *8 (citing *Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015) (citing *Cook v. State*, 921 So.2d 631, 634 (Fla. 2d DCA 2005)); *Thakkar v. Good Gateway, LLC*, 351 So. 3d 192, 195 (Fla. 5th DCA 2022); *Fernandez v. Cruz*, 341 So. 3d 410, 412 (Fla. 3d DCA 2022); *Provident Life & Accident Ins. Co. v. Genovese*, 138 So. 3d 474, 477 (Fla. 4th DCA 2014)).

[43] In its Summary Judgment and Dismissal Order, the Court had determined that the "critical and necessary" element was a disputed issue. *Khan*, 2023 WL 2413723, at *9. Upon further reflection, and in light of *Bartenwerfer*, it is clear that the state court jury's finding that the Defendants were part of a conspiracy to defraud the Plaintiff and that the state court defendants (including the Defendants here) engaged in overt acts (including manufacturing fraudulent invoices and processing fraudulent invoices), was a critical and necessary part of the state court jury's determination, because determination of this issue was "essential to the ultimate decision." *Id.* at *9 (citing *Genovese*, 138 So. 3d at 478 (citing *Porter v. Saddlebrook Resorts, Inc.*, 679 So. 2d 1212, 1215 (Fla. 2d DCA 1996))).

is identical to the issue now before this Court: whether the debt for civil conspiracy is a debt for money to the extent obtained by false pretenses, a false representation, or actual fraud.[44]

The state court jury did not identify any specific false representations made by any defendant that would provide the basis for collateral estoppel. The liability for civil conspiracy is therefore not a debt for money obtained by a false representation. But the jury's findings that the Defendants conspired to defraud the Plaintiff and convert all or part of his investment in Alliance, and engaged in overt acts that included manufacturing fraudulent invoices, processing fraudulent invoices, and transferring funds to themselves or third-party entities owned by them or their families, do establish both actual fraud and false pretenses. The verdict establishes actual fraud because these findings show "deceit, artifice, trick, or design involving the direct and active operation of the mind, used to circumvent and cheat another,"[45] and the verdict establishes false pretenses because these findings demonstrate "a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor."[46] Thus, the state court jury answered the very same question this Court must answer here to determine

---

[44] 11 U.S.C. § 523(a)(2)(A).
[45] *Saks*, 2022 WL 18273866, at *6 (cleaned up).
[46] *Id.* (cleaned up).

dischargeability: are these debts for civil conspiracy debts for money obtained by false pretenses or actual fraud? The state court jury decided they were.

*Bartenwerfer* then instructs the Court to ask if the debtors are liable for these debts under applicable law, without considering whether the debtors themselves actually committed the fraudulent acts. And here, again, the state court jury found both Defendants liable for this civil conspiracy to defraud. So under *Bartenwerfer*, collateral estoppel applies to the civil conspiracy claim because (1) the identical issue was presented in the prior proceeding, (2) the issue was a critical and necessary part of the prior determination, (3) there was a full and fair opportunity to litigate the issue, (4) the parties to the prior action were identical to the parties of the current proceeding, and (5) the issue was actually litigated.[47] Specifically, the jury determined that (a) there was a debt, (b) for money obtained by false pretenses or actual fraud, (c) for which the Defendants are liable. That is the identical issue presented here. This issue was a critical and necessary part of the jury's determination, for which there was a full and fair opportunity to litigate, with identical parties, that was actually litigated. Thus, under *Bartenwerfer*, the Defendants' joint debts to the Plaintiff for civil conspiracy[48] are clearly excepted from their chapter 7 bankruptcy discharges. And because *Bartenwerfer* is an intervening change in controlling law that the Court did not consider in its Summary Judgment and Dismissal Order, the Court will grant the Post-Judgment Motion under Rule

---

[47] *See Khan*, 2023 WL 2413723, at *8.
[48] Per the state court final judgment, the total debt for which the Defendants are jointly and severally liable consists of $1,000,000.00 in principal liability, plus $203,893.16 in prejudgment interest, plus attorneys' fees, costs, and post-judgment interest.

59(e), solely to the extent that under *Bartenwerfer*, the Defendants' joint and several debts for civil conspiracy are excepted from their chapter 7 bankruptcy discharges under 11 U.S.C. § 523(a)(2)(A).

      C.    <u>The Remainder of the Post-Judgment Motion is Denied</u>.

The remainder of the Post-Judgment Motion, however, must be denied. Nothing in the record on summary judgment otherwise supported judgment as a matter of law for the Plaintiff under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6). The only other debt for which the state court jury found Defendant Huma Aamir liable was for breach of a guaranty.[49] As detailed by the Court in the Summary Judgment and Dismissal Order, nothing in the record supported application of collateral estoppel as to whether this debt for breach of contract was a debt for money obtained by false pretenses, a false representation, or actual fraud, as described in section 523(a)(2), a debt for embezzlement or larceny as described in section 523(a)(4), or a debt for willful and malicious injury, as described in section 523(a)(6). Likewise, as to Defendant Aamir Khan, the state court jury found him liable for breach of a wind down agreement, unjust enrichment, and conversion. But again, nothing in the record supported application of collateral estoppel as to whether these debts were for money obtained by false pretenses, a false representation, or actual fraud, embezzlement or larceny,[50] or willful and malicious injury. Thus, after carefully considering the motion

---

[49] The jury also found that Defendant Huma Aamir was "unjustly enriched at the expense of and/or to the detriment of" the Plaintiff, but awarded $0.00 in damages. (ECF No. 113-1, at 10.)

[50] Although conversion under Florida law is similar to embezzlement and larceny, it is not the same thing. *See Khan*, 2023 WL 2413723, at *11. Embezzlement and larceny require fraudulent intent, but conversion does not. *Id.* (citing *In re Keitel*, 2018 WL 9597494, at *3 (Bankr. S.D. Fla. 2018); *NesSmith Elec. Co. v. Kelley (In re Kelley)*, 84 B.R. 225, 231 (Bankr. M.D. Fla. 1988); *Synod of S. Atl. Presbyterian Church v. Magpuaso*, 265 B.R. 492, 497 (Bankr. M.D. Fla. 2011)).

for summary judgment, the respective statements of material fact in support of and in opposition to the motion for summary judgment, the materials in the record supporting the motion for summary judgment,[51] the briefs in support of and opposing summary judgment, as well as the second amended complaint (including the exhibits attached thereto), and the briefs in support of and opposing dismissal, the Court correctly determined (now with the exception of the debt for civil conspiracy) that the state court jury verdict did not support application of collateral estoppel.

And because the second amended complaint relied almost exclusively on the state court jury verdict and final judgment attached thereto – without any other material allegations – the Court found it failed to meet the pleading standard required to survive a motion to dismiss.[52] Except for the debt for civil conspiracy – which, after applying *Bartenwerfer,* is excepted from discharge based solely on the collateral estoppel effect of the state court jury verdict and final judgment – the

---

[51] *See* Fed. R. Civ. P. 56(c)(1)(A).

[52] With respect to dismissal, the Plaintiff appears to be under the misapprehension that the old pleading standard under *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) – which stated that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" – still applies. *See* ECF No. 133, at 11 ("Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint."; "Dismissal is not appropriate in view of the state verdicts in this case since plaintiff can obviously prove a set of facts that would support the allegations of the complaint."), 12 ("[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief can be granted."); ECF No. 137, at 1 ("Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint."). But *Conley* was abrogated by *Twombly* sixteen years ago. 550 U.S. at 563 (noting that "after puzzling the profession for 50 years," the *Conley* standard "has earned its retirement."). In its Summary Judgment and Dismissal Order, this Court laid out the plausibility standard now required by *Twombly* and *Iqbal*, 556 U.S. 662, to state a claim for relief under Federal Rule of Civil Procedure 8(a), as well as the heightened pleading requirements under Rule 9(b) when alleging fraud. *Khan*, 2023 WL 2413723, at *7-8. Reviewing the second amended complaint against this standard (but without having considered *Bartenwerfer*), the Court determined that it failed to comply and therefore had to be dismissed. *Id.*

second amended complaint "contained virtually no material factual allegations beyond the procedural history of this matter, and certainly did not 'state with particularity the circumstances constituting fraud' as required by Rule 9(b)."[53]

The Plaintiff argues in the Post-Judgment Motion, however, that the underlying state court complaint,[54] jury verdict, and final judgment – which were attached as exhibits to the second amended complaint – do contain sufficiently plausible allegations to satisfy Rules 8(a) and 9(b). While it may be true that allegations in the state court complaint – if they had actually been pleaded in the second amended complaint – might state a claim for relief, the Plaintiff failed to plead those allegations here, as required by Rules 8, 9, and 10 of the Federal Rules of Civil Procedure. Although attaching exhibits to a complaint is permissible under Federal Rule of Civil Procedure 10(c), attaching a copy of a state court complaint as an exhibit to a federal court complaint is not a substitute for complying with the pleading requirements of Rules 8(a), 9(b), and 10(b). Indeed, Rule 10(b) requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."[55] Certainly, attachments to a complaint may support a party's factual allegations. And under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."[56] A copy of a state court complaint, however, does not constitute a "written instrument"

---

[53] *Khan*, 2023 WL 2413723, at *10.

[54] The state court complaint is 32 pages long, contains nineteen counts, has 182 numbered paragraphs, and attaches seven exhibits. While the plaintiff in the state court action is the Plaintiff here, the state court complaint names six defendants, only two of whom are the Defendants here.

[55] Fed. R. Civ. P. 10(b).

[56] Fed. R. Civ. P. 10(c).

under Rule 10(c),[57] and merely incorporating a state court complaint by reference fails to satisfy Rule 10(b)'s requirements to state claims in numbered paragraphs.

These are not mere technical pleading requirements. Rule 8(e) commands that pleadings should be construed "so as to do justice."[58] To do justice, a defendant must be able to discern – and answer – the allegations against it.[59] Again, Rule 10(b) requires a plaintiff to state its claim in numbered paragraphs, each limited as far as practicable to a single set of circumstances.[60] Rule 8(b)(1)(B) then requires that a defendant admit or deny the allegations asserted against it by a plaintiff.[61] Under Rule 8(b)(3), however, if a party does not intend to deny all of the allegations by a general denial (which is permitted under Rule 8(b)(3) if done in good faith), then the party "must either specifically deny designated allegations or generally deny all except those specifically admitted."[62] By not pleading specific allegations supporting his claims for relief in this adversary proceeding – and instead just attaching a copy of the state court complaint as an exhibit – the Plaintiff deprived the Defendants of the opportunity to specifically deny those allegations.

---

[57] *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("The term 'written instrument' generally refers to a legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." (cleaned up); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("The traditional understanding of an instrument is a document that defines a party's rights, obligations, entitlements, or liabilities—a contract, for example." (citing BLACK'S LAW DICTIONARY 869 (9th ed. 2009)). The state court jury verdict and final judgment may constitute "instruments" for purposes of Rule 10(c), because those are legal documents that define the rights, duties, entitlements, or liabilities, of the parties. The state court complaint, however, does not. It just sets forth allegations.

[58] Fed. R. Civ. P. 8(e).

[59] This is why Rule 12(e) permits a party to move for a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

[60] Fed. R. Civ. P. 10(b).

[61] Fed. R. Civ. P. 8(b)(1)(B).

[62] Fed. R. Civ. P. 8(b)(3).

As the Eleventh Circuit explained in *Barmapov v. Amuial*:[63]

> The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading." . . . These rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant.[64]

As further observed by Judge Tjoflat in his concurring opinion in *Barmapov*:

> The federal judiciary is a system of scarce resources, and "it is not the proper function of courts in this Circuit to parse out incomprehensible allegations." . . . Our district courts have neither the manpower nor the time to sift through a morass of irrelevant facts in order to piece together claims for plaintiff's counsel. . . . As the drafters of their pleadings and as officers of the court, lawyers practicing in this Circuit bear a responsibility to preserve the limited resources of the judiciary and present only clear, precise pleadings to the courts.[65]

Thus, while it is certainly acceptable to attach a copy of a written instrument as an exhibit to complaint and to make it a part thereof "for all purposes,"[66] such an exhibit is not a substitute for well-pleaded allegations that a defendant can specifically admit or deny, as required by Rules 8(a), 9(b), and 10(b).[67] And because the copy of the state court complaint attached as an exhibit to the second amended complaint here is not a substitute for well-pleaded allegations, except with respect to non-dischargeability

---

[63] 986 F.3d 1321 (11th Cir. 2021).

[64] *Id.* at 1324 (cleaned up).

[65] *Id.* at 1327-28 (Tjoflat, J., concurring) (cleaned up).

[66] Fed. R. Civ. P. 10(c).

[67] Indeed, although this adversary proceeding is based on debts that resulted from a state court action, this adversary proceeding is a separate and distinct federal court action, with separate and distinct (although certainly related) elements the Plaintiff must prove to prevail. If the Plaintiff could simply attach a copy of the state court complaint rather than plead new allegations, how would the Defendants even know which of the 182 paragraphs of the state court complaint – asserting 19 claims for relief against 6 defendants – are actually allegations germane to the Plaintiff's three-count complaint to determine dischargeability of the underlying debts here, to which they would have to respond?

of the debt for conspiracy to defraud alleged in Count I, the Court appropriately granted the Defendants' motion to dismiss.

At bottom, other than as to the *Bartenwerfer* issue, the Plaintiff failed in his Post-Judgment Motion to identify any mistake, inadvertence, surprise, or excusable neglect; any newly discovered evidence; any fraud; or any clear error of law or manifest injustice that warrants reconsideration of the Summary Judgment and Dismissal Order. But because *Bartenwerfer* represents an intervening change in controlling law, that is a sufficient basis to grant the Post-Judgment Motion in part under Rule 59(e). Accordingly, in light of *Bartenwerfer*, the Court must now conclude that Count I of the second amended complaint does state a claim upon which relief can be granted as to the debt for civil conspiracy. To be clear, but for *Bartenwerfer*, Count I would not have stated a claim. Count I essentially said, "we had a jury trial in state court based on the attached complaint, here's what the jury found, ergo the debt is not dischargeable." For the reasons discussed in detail above, and in its Summary Judgment and Dismissal Order, such meager allegations ordinarily would not have sufficed under Rules 8(a), 9(b), 10(b), *Twombly*, and *Iqbal*.[68] But in the context of this case, after *Bartenwerfer* there are only three simple allegations to plead: (1) there is a debt, (2) for false pretenses or actual fraud, (3) for which the debtors are liable. Because the second amended complaint adequately pleaded these allegations as to the civil conspiracy debt, it sufficed to state a claim here.

---

[68] *See Khan*, 2023 WL 2413723, at *10.

Thus, for the reasons discussed above, the Plaintiff is now entitled to summary judgment on Count I, solely as to the debt for civil conspiracy. But otherwise, the Court correctly denied summary judgment as to the nondischargeability of Huma Aamir's debt for breach of guaranty and as to Aamir Khan's debt for breach of a wind down agreement, conversion, and unjust enrichment. The Court also properly dismissed Counts II and III of the second amended complaint for failure to state a claim upon which relief may be granted.

D.    <u>Leave to Amend is Denied</u>.

Finally, the Plaintiff complains that the Court should not have dismissed his second amended complaint with prejudice and argues that he should be given leave to file a third amended complaint. But, as the Court noted in its Summary Judgment and Dismissal Order, the Court "is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend."[69] The Plaintiff certainly had adequate notice of the basis for the Defendants' motion to dismiss.[70] While only three pages long, the motion to dismiss succinctly and clearly articulated why under Rule 8(a)(2) and *Twombly*[71] the second amended complaint failed to state a claim upon which relief can be granted.[72] Faced with that motion, the Plaintiff could have sought leave to further amend his second amended complaint to address these pleading deficiencies. Instead, the Plaintiff chose to respond by accusing the Defendants of

---

[69] *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).
[70] ECF No. 117.
[71] 550 U.S. at 555-56.
[72] *See* Fed. R. Civ. P. 12(b)(6).

making "time-wasting bad faith motions"[73] and "making obviously misleading and incorrect statements about the complaint,"[74] and then essentially restating the allegations of his second amended complaint as his argument opposing dismissal.

As the Court noted in its Summary Judgment and Dismissal Order, however, the Plaintiff had ample opportunity to state plausible claims for relief. The Defendants' joint bankruptcy case was filed in 2018. The state court action was commenced in 2018. This adversary proceeding was filed in 2019. At the end of 2019, this Court granted stay relief to permit the state court action to proceed to final judgment and abated this adversary proceeding. The state court action then proceeded through a weeklong jury trial in July 2022, resulting in a final judgment entered in August 2022. This Court then lifted the abatement of this adversary proceeding in October 2022.[75] With the state court record having been available to him all along, the Plaintiff has failed to articulate any reason why he should now be permitted to file a third amended complaint. Accordingly, his request for leave to file a third amended complaint will be denied.

## III.   CONCLUSION.

Based on *Bartenwerfer* and the collateral estoppel effect of the state court jury verdict and final judgment, the Defendants' joint and several debts to the Plaintiff for civil conspiracy are excepted from their discharges under 11 U.S.C. § 523(a)(2)(A). Accordingly, Count I of the second amended complaint does state a plausible claim

---

[73] ECF No. 124, at ¶ 1.
[74] *Id.* at ¶ 3.
[75] ECF No. 103.

for relief as to these debts, and the Plaintiff is entitled to summary judgment on this issue. As to all the other arguments raised in the Post-Judgment Motion, however, for the reasons discussed above, the motion must be denied. It is therefore

**ORDERED** that:

1.      The Post-Judgment Motion[76] is **GRANTED IN PART and DENIED IN PART**, as set forth herein.

2.      The Final Judgment[77] is **VACATED**.

3.      Summary judgment is **GRANTED** to the Plaintiff solely with respect to the Defendants' joint and several debts (including for attorneys' fees, costs, and post-judgment interest) to the Plaintiff for civil conspiracy, as set forth in paragraphs 12 and 13 of the August 13, 2022 *Final Judgment Against Defendants Huma Aamir and Aamir Khan Pursuant to Trial Verdict* entered in *Panjwani v. Khan*, Case No. CACE18026971, in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, which are excepted from the Defendants' bankruptcy discharges under 11 U.S.C. § 523(a)(2)(A).

4.      Counts II and III of the second amended complaint[78] are **DISMISSED WITH PREJUDICE**.

5.      Leave to file a third amended complaint is **DENIED**.

6.      All other relief requested in the Post-Judgment Motion is **DENIED**.

---

[76] ECF No. 133.
[77] ECF No. 129.
[78] ECF No. 109.

7.      The Court will enter a separate *Final Judgment After Reconsideration* consistent with the foregoing.

# # #

Copies furnished to all interested parties by the Clerk of Court